

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2004

# USA v. Chambers

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2696

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Chambers" (2004). *2004 Decisions*. Paper 917.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/917

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2696
_____

UNITED STATES OF AMERICA

v.

ERIC CHAMBERS,

Appellant

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. No. 02-CR-00114 )
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
December 15, 2003

Before: ROTH, MCKEE, AND ROSENN <u>Circuit Judges</u>.

(Filed: March 24, 2004)

_____

OPINION
_____

<u>ROTH, Circuit Judge</u>

Eric Chambers was charged in a single-count indictment of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Chambers moved to suppress the firearms seized during a *Terry* stop, arguing that he did not consent to the search of his vehicle. After the District Court denied the motion, Chambers entered a plea of guilty to the indictment, reserving his right to appeal the adverse suppression ruling. Chambers was sentenced to 96 months imprisonment. Chambers now appeals from the District Court's order denying his motion to suppress. We will affirm.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

During the morning of December 20, 2001, just outside of Harrisburg, Pennsylvania, Officer Adams stopped the automobile being driven by Chambers for suspicion of a counterfeit inspection sticker. Chambers identified himself and told Officer Adams that he did not have a drivers' license, the registration to the vehicle, or insurance paperwork. Chambers indicated that he had purchased the vehicle a couple of months earlier but could not provide the seller's name. Officer Adams confirmed that the inspection sticker was counterfeit, and while questioning Chambers detected a strong order of marijuana from around Chambers' person and from inside the vehicle. Officer Adams returned to his patrol car and summoned backup, and while doing so Officer Vogel, who had heard Officer Adam's initial report of a traffic stop, arrived on the scene.

The officers went back to Chamber's vehicle and asked Chambers if there was any marijuana or contraband in the car. Chambers responded "I don't know." Officer Adams

2

then asked Chambers for consent to search the vehicle. According to both Officers Adams and Vogel, Chambers gave his consent and upon request stepped out of the vehicle. Officer Adams claims he again asked Chambers if he had any problem with them searching the vehicle, and Chambers said no. Chambers claims he did not give consent. According to Chambers, the first time he was asked, he responded by asking the officer what does a search have to do with an inspection sticker violation, and the officers ignored him. The second time Chambers was asked, he claims he just looked at the officer "like he was crazy."

The Officers then asked Chambers if he had anything illegal on his person. Chambers patted his coat pocket and said he had some "weed". Officer Adams removed a small baggie from Chambers' coat pocket, which contained a substance they suspected was marijuana and a small glass vial. Chambers was taken into custody, and Officer Adams began searching the vehicle. In the unlocked glove box, Officer Adams found a semi-automatic handgun loaded with a full magazine of ammunition and a live round in the chamber. While conducting the search, Corporal Brubaker arrived, responding to the call for backup. Officer Adams and Corporal Brubaker then decided to terminate the search and obtain a search warrant. The vehicle was impounded, and the following day the officers obtained and executed a search warrant whereby they found a loaded sawed-off 12-gauge shotgun and a loaded .38 caliber revolver.

II.

"[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). This Court reviews the District Court's factual determination of whether a defendant consented to a search for clear error. *United States v. Kim*, 27 F.3d 947, 954-55 (3d Cir. 1994). "A finding is ''clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse it even if sitting as the trier of fact we would have weighed the evidence differently. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 514 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*.

Chambers argues that the District Court's finding is clearly erroneous because (1) in light of Chambers' prior criminal record, including felony convictions, it is unlikely Chambers would consent to a search that would inevitably disclose the presence of prohibited weapons; (2) if Officer Adams had actually obtained an oral consent, there would have been no need to secure a search warrant; and (3) if Chambers had given his

oral consent, it would be reasonable to expect a notation of that consent in the police report, and the government did not introduce the report or any other notes by Officer Adams as rebuttal evidence at the suppression hearing. These arguments simply take exception to the District Court's view of the evidence. The District Court credited the testimony of the police officers and concluded that Chambers consented to the search. As this conclusion is plausible it cannot be clearly erroneous. *See id.*

We will therefore affirm the order of the District Court.